Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL AZZOPARDI,<br><br>    Plaintiff,<br><br>    v.<br><br>BIOSPECIFICS TECHNOLOGIES CORP., JENNIFER CHAO, MICHAEL SCHAMROTH, PAUL GITMAN, MARK WEGMAN, TOBY WEGMAN, JOSEPH TRUITT, MIKE SHERMAN, and COREY FISHMAN,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Michael Azzopardi ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against BioSpecifics Technologies Corp. ("BioSpecifics" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

1

violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of BioSpecifics by Beta Acquisition Corp. ("Merger Sub"), a wholly owned indirect subsidiary of Endo International plc ("Endo").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company was headquartered in this District during 2020.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of BioSpecifics common stock.

7. Defendant BioSpecifics is a biopharmaceutical company that develops an injectable collagenase clostridium histolyticum ("CCH") for various indications in the United States and internationally. The Company is incorporated in Delaware. The Company's headquarters and principal executive office was located in Lynbrook, New York until April 2020. The Company's common stock trades on the NASDAQ Global Market under the ticker symbol, "BSTC."

8. Defendant Jennifer Chao ("Chao") is Chairman of the Board of the Company.

9. Defendant Michael Schamroth ("Schamroth") is a director of the Company.

10. Defendant Paul Gitman ("Gitman") is a director of the Company.

11. Defendant Mark Wegman ("M. Wegman") is a director of the Company.

12. Defendant Toby Wegman ("T. Wegman") is a director of the Company.

13. Defendant Joseph Truitt ("Truitt") is Chief Executive Officer ("CEO") and a director of the Company.

14. Defendant Mike Sherman ("Sherman") is a director of the Company.

15. Defendant Corey Fishman ("Fishman") is a director of the Company.

16. Defendants Chao, Schamroth, Gitman, M. Wegman, T. Wegman, Truitt, Sherman, and Fishman are collectively referred to herein as the "Individual Defendants."

17. Defendants BioSpecifics and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Company's Relationship with Endo

18. The Company owns intellectual property with respect to injectable CCH that is used to treat, among other indications, Dupuytren's contracture ("DC"), Peyronie's disease ("PD"),

3

frozen shoulder syndrome, uterine fibroids, and cellulite. Injectable CCH is currently approved and marketed in the U.S. under the trademark XIAFLEX® for the treatment of both DC and PD.

19.     The Company and Endo are parties to the Second Amended and Restated Development and License Agreement (the "License Agreement") which grants Endo the exclusive worldwide rights to develop, market, and sell certain products containing the Company's enzyme CCH, including a product that Endo markets for approved indications under the trademark XIAFLEX® and a product that recently received marketing approval that Endo intends to commercialize under the trademark Qwo™.

20.     The Company derives substantial revenue from its license agreement with Endo, under which the Company receives license and sublicense income, royalties, milestones and mark-up on cost of goods sold payments related to the sale, regulatory submissions and approval of XIAFLEX® and other collagenase products.

21.     The Company's revenue from the License Agreement is projected to grow substantially over the next (7) seven years.

22.     On July 6, 2020, Endo announced that it received FDA approval of Qwo™ (collagenase clostridium histolyticum-aaes) for the treatment of moderate to severe cellulite in the buttocks of adult women. Endo anticipates Qwo™ to be available commercially in the U.S. starting in the first half of 2021.

23.     In early 2020, Endo announced that it initiated XIAFLEX® development programs for the treatment of plantar fibromatosis and adhesive capsulitis. Endo had previously collaborated with partners to commercialize XIAFLEX® and Xiapex® outside of the United States and Canada. Under the Company's license agreement with Endo, Endo has the right to further develop CCH

for frozen shoulder and plantar fibromatosis, as well as certain other licensed indications. Endo has a right to opt-in for use of CCH in the treatment of uterine fibroids.

### B. The Proposed Transaction

24. On August 12, 2020, during discussions related to the License Agreement and the potential for further development of XIAFLEX® and Qwo™ for other indications, the CEO of Endo indicated to Defendant CEO Truitt that Endo might be interested in acquiring the Company.

25. On August 21, 2020, Endo delivered an initial written non-binding indication of interest to the Company to acquire all of the Company's issued and outstanding shares of common stock for $85.00 per share in cash.

26. That same day, Centerview Partners LLC ("Centerview"), the Company's financial advisor, reached out to Company A to inquire whether it would be interested in learning more about the Company but Company A declined to proceed.

27. On August 25, 2020, the Board determined that Endo's offer "undervalued the Company both in terms of the value of the royalty and milestone payments payable for new collagenase indications and in terms of the potential value creation from purchasing new royalty bearing assets under the direction of the new management team."

28. On September 1, 2020, at the direction of the Board, representatives of ClearView Healthcare Partners LLC ("ClearView") gave a presentation to Endo management on additional potential indications for XIAFLEX® and Qwo™ to justify why Endo should increase its offer price for the Company (the "ClearView Presentation"). ClearView was previously engaged by the Company to advise Company management and the Board on the value of future pipeline CCH indications. The presentation given to Endo management was adapted for use in negotiations regarding the Proposed Transaction.

29. On September 8, 2020, Endo indicated it would be willing to consider increasing the offer price per share to $88.50 in cash subject to due diligence.

30. On October 5, 2020, Endo had completed its due diligence and delivered a non-binding indication of interest to acquire the Company for $87.00 per share in cash. Endo indicated that this decline in the offer price was due to third party royalty obligations of the Company on licensed indications.

31. On October 6, 2020, Defendant Truitt indicated to Endo's CEO that Endo's proposal was inadequate and would not provide a basis for the Board to move forward.

32. On October 7, 2020, Endo's CEO contacted Defendant Truitt and submitted a "best and final" offer for Endo to acquire all outstanding shares of the Company for $88.50 per share in cash.

33. Thereafter, the Company and Endo agreed to proceed to negotiate the terms of definitive transaction agreements on the basis of Endo's $88.50 per share offer.

34. On October 19, 2020, BioSpecifics issued a press release announcing that it had entered into a definitive merger agreement under which Endo will acquire BioSpecifics for $88.50 per share in cash. The press release states, in pertinent part:

**BioSpecifics to be Acquired by Endo Pharmaceuticals**

- All cash transaction at $88.50 per share totaling $658 million in equity value -

NEWS PROVIDED BY
**BioSpecifics Technologies Corp.**
Oct 19, 2020, 07:30 ET

WILMINGTON, Del., Oct. 19, 2020 /PRNewswire/ -- BioSpecifics Technologies Corp. (NASDAQ: BSTC) announced today that it has entered into a definitive merger agreement under which Endo International plc (NASDAQ: ENDP) will acquire BioSpecifics for an estimated equity value of approximately $658.0 million ($540.0 million in enterprise value net of cash on hand), or $88.50 per share in cash.

The transaction was unanimously approved by both BioSpecifics' and Endo's Boards of Directors and is anticipated to close during the fourth quarter of 2020.

"BioSpecifics Technologies Corp. pioneered the development of collagenase-based therapies, which has resulted in a robust injectable collagenase (CCH) portfolio, consisting of XIAFLEX® to treat the vast number of diseases and medical conditions caused by the excess accumulation of collagen and Qwo™ for the treatment of cellulite," said Joseph Truitt, Chief Executive Officer of BioSpecifics.

*   *   *

**Terms of the Agreement**
Under the terms of the merger agreement, Endo, through a wholly-owned subsidiary, will commence an all-cash tender offer for all outstanding shares of BioSpecifics common stock at a price of $88.50 per share. The closing of the tender offer will be subject to a number of conditions, including that a majority of BioSpecifics' shares are tendered in the tender offer, the expiration of the waiting period under antitrust laws and other customary closing conditions.

Promptly following the completion of the tender offer, Endo's acquisition subsidiary will be merged into BioSpecifics, with any remaining shares of BioSpecifics common stock to be canceled and converted into the right to receive consideration of $88.50. The merger agreement includes a remedy of specific performance and is not subject to a financing condition.

**Advisors**
Centerview Partners LLC acted as the exclusive financial advisor to BioSpecifics and Morgan, Lewis & Bockius LLP is serving as legal counsel.

**About BioSpecifics Technologies Corp.**
BioSpecifics Technologies Corp. is a commercial-stage biopharmaceutical company. The Company discovered and developed a proprietary form of injectable collagenase ("CCH"), which is currently marketed by the Company's partner, Endo, as XIAFLEX® in North America for the treatment of Dupuytren's contracture and Peyronie's disease. Endo announced that it received FDA approval of CCH for the treatment of moderate to severe cellulite in the buttocks of adult women; Qwo™ is expected to be available commercially in the U.S. starting in the first half of 2021. The CCH research and development pipeline includes several additional potential indications including adhesive capsulitis and plantar fibromatosis. For more information, please visit www.biospecifics.com.

**About Endo International plc**
Endo International plc (NASDAQ: ENDP) is a specialty pharmaceutical company committed to helping everyone they serve live their best life through the delivery of quality, life-enhancing therapies. Endo's decades of proven success come from a global team of passionate employees collaborating to bring the best treatments

forward. Together, Endo boldly transforms insights into treatments benefiting those who need them, when they need them. Endo has global headquarters in Dublin, Ireland and U.S. headquarters in Malvern, Pennsylvania. For more information, please visit www.endo.com.

35. On November 2, 2020, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

## C. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

36. The Solicitation Statement, which recommends that BioSpecifics shareholders tender their shares to Merger Sub in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Centerview, in connection with its fairness opinion; and (iii) potential conflicts of interest involving Centerview.

37. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of the Company Board; (ii) Reasons for the Company Board's Recommendation; (iii) Opinion of Centerview Partners LLC; and (iv) Management Projections.

38. The tender offer in connection with the Proposed Transaction will expire at one minute after 11:59 p.m. New York time on December 1, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed

Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning the Company's Financial Projections

39. The Solicitation Statement omits material information concerning the Company's financial projections.

40. The Solicitation Statement provides that the Company's management prepared certain non-public unaudited prospective financial information for fiscal years 2021 through 2028 in connection with its evaluation of a proposed transaction. (the "Management Projections"). The Management Projections were provided to and relied upon by Centerview in connection with its fairness opinion and related financial analyses. The Management Projections were also provided to the Board in considering, analyzing and evaluating the Proposed Transaction.

41. With respect to the Management Projections, the Solicitation Statement fails to disclose: (1) all line items underlying Total Net Revenue; and (2) the Company's net income projections.

42. The line items underlying Total Net Revenue, including a breakdown of projected revenue by product, will allow shareholders to assess whether they should accept the current offer for their shares or remain a shareholder of the Company to reap the potential benefits of the Company's continued pursuit of its standalone business strategies, including through its licensing Agreement with Endo.[1]

43. The Solicitation Statement also fails to provide a fair summary of the ClearView

---

[1] This information is also material because it appears the Board reviewed this type of information in reaching its conclusion on August 25, 2020 that Endo's then $85 per share offer "undervalued the Company both in terms of the value of the royalty and milestone payments payable for new collagenase indications and in terms of the potential value creation from purchasing new royalty bearing assets under the direction of the new management team."

Presentation. The ClearView Presentation demonstrated the value of future pipeline CCH indications. This information is material because it was used to justify why Endo should increase its $85.00 per share offer price and a version of the ClearView Presentation was relied upon by Company management and the Board.

44. Further, the Solicitation Statement provides that the Management Projections "reflect a risk-adjusted outlook, based on certain internal assumptions," stating in pertinent part:

> The Management Projections reflect a risk-adjusted outlook, based on certain internal assumptions about the probability of technical success and regulatory approvals and commercialization of XIAFLEX® for additional indications and other relevant factors related to the Company's long-range operating plan, including a favorable outcome of the pending litigation on royalty obligations, a successful launch of Qwo™ and an expansion of the indications for XIAFLEX® that are commercialized and generate revenue for the Company. The Management Projections also reflect royalty payment revenue that is payable for a finite term under the License Agreement.

45. Yet the Solicitation Statement fails to adequately disclose the impact that the risk-adjustments, the internal assumptions, and the royalty payment revenue payable under the License Agreement with Endo had on the Management Projections, and further fails to quantify the assumptions underlying the projections, including "the probability of technical success and regulatory approvals and commercialization of XIAFLEX® for additional indications and other relevant factors related to the Company's long-range operating plan, including a favorable outcome of the pending litigation on royalty obligations, a successful launch of Qwo™ and an expansion of the indications for XIAFLEX® that are commercialized and generate revenue for the Company. . . . [and the] royalty payment revenue that is payable for a finite term under the License Agreement."

46. The disclosure of the aforementioned information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the

10

Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Centerview's Analyses

48. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Centerview.

49. The Solicitation Statement provides that, in connection with its fairness opinion and related financial analyses, Centerview reviewed:

> certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections relating to the Company prepared by management of the Company and furnished to Centerview by the Company for purposes of Centerview's analysis, which are referred to in this summary of Centerview's opinion as the '***Forecasts***,' and which are collectively referred to in this summary of Centerview's opinion as the '***Internal Data***.'

*See* Solicitation Statement at 25-26 (emphasis in original).

50. In contrast to the Management Projections, the Solicitation Statement, however, fails to disclose the Forecasts or the Internal Data.

51. The Solicitation Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the risk-adjusted, after-tax unlevered free cash flows; (2) the individual inputs and assumptions underlying the discount rates ranging from 7.5% to 9.5%;

11

(3) the Company's fully diluted shares outstanding as of October 15, 2020; and (4) the implied terminal value of the Company.[2]

52. With respect to Centerview's "*Analyst Price Target Analysis*," the Solicitation Statement fails to disclose the source of the research analyst report utilized by Centerview in its analysis.

53. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to BioSpecifics shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, BioSpecifics shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Centerview

54. The Solicitation Statement omits material information concerning potential conflicts of interest involving Centerview.

55. The Solicitation Statement provides that Centerview had not been engaged to provide financial advisory or other services to BioSpecifics or Endo during the two years prior to the date of its fairness opinion and did not receive compensation from either BioSpecifics or Endo

---

[2] It is unclear whether Centerview utilized the unlevered free cash flows from the Management Projections, as the Solicitation Statement provides that "Centerview performed a discounted cash flow analysis of the Company based on the Forecasts and the calculations of risk-adjusted, after-tax unlevered free cash flows." *See* Solicitation Statement at 29.

during such period, stating in pertinent part:

> In the two years prior to the date of its written opinion, except for its current engagement, Centerview had not been engaged to provide financial advisory or other services to the Company, and Centerview did not receive any compensation from the Company during such period. In the two years prior to the date of its written opinion, Centerview was not engaged to provide financial advisory or other services to Endo, and Centerview did not receive any compensation from Endo during such period.

56. The Solicitation Statement, however, fails to disclose whether and to what extent Centerview provided services to affiliates of BioSpecifics and/or Endo, including the timing and nature of the services provided and the amount of compensation received for such services, in the two years prior to the date of its fairness opinion.

57. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

58. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

59. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60. Section 14(e) of the Exchange Act states, in relevant part:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

61. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

62. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

63. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

64. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

65. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

66. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

67. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

69. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

70. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

71. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

72. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

73. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted

15

information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

74.     Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

75.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

76.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

78.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly

16

owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

79. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

80. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

81. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

82. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.  Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 7, 2020                                  Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*